THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT WATKINS, Defendant-Appellant.

Third District    No. 80-193

Opinion filed March 27, 1981.

Robert Agostinelli and Tom Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

After a jury trial, Robert Watkins was convicted of armed robbery, occurring in Joliet, Illinois, on September 15, 1978. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a).) He was sentenced to the penitentiary for 18 years. This is his appeal.

The facts unfold as follows: On September 15, 1978, at three o'clock in the afternoon, Sophie Hanson was working alone at the Iverson Florist Shop. A man entered and conversed .with Mrs. Hanson for 10 minutes about flowers for a funeral. Indicating that he was unable to decide, he left, saying he would return. Later, Mary Gramera, the delivery girl, returned to Iverson's. At about five o'clock, the store closed for business. Shortly thereafter, when Miss Gramera was about to leave, she met two men at the rear door. One, the man who talked with Mrs. Hanson earlier, insisted on making a purchase. Mrs. Hanson recognized him and both men were allowed entry.

Mrs. Hanson went to the front of the store followed by the prospective customer, whom she later identified as Robert Watkins. Mary Gramera stayed in the back room with the other man, who was Larry Cowans. There was no conversation between the latter two persons. On leaving the back room, Mrs. Hanson was grabbed by Robert Watkins, and she felt a "hard object" by her neck. She was threatened. Mr. Watkins relieved the store's register, cash box, and Mrs. Hanson of money. Next, he forced both employees to go into the basement. The men exited. The entire episode lasted 10 minutes. The police arrived shortly thereafter.

In its case-in-chief, the State presented three occurrence witnesses: Larry Cowans, Sophie Hanson, and Mary Gramera. Cowans was an accomplice to the crime. He shared in the robbery's proceeds. He testified that on September 15, 1978, after drinking beer most of the day, he went for a ride with "James Watkins." They ended up at Iverson's. On October 5, 1978, Cowans identified Watkins as the robber in the photographic show-up. He also identified him in court.

Mary Gramera and Sophie Hanson both identified Robert Watkins in court as the robber. Previously, both had identified him at a photographic show-up on September 21, 1978. Mrs. Hanson testified she never saw a weapon in Watkins' hand. Mary Gramera stated that when Watkins was in the front room of the store she noticed a metal object in his hand. On cross-examination she said that before entering the basement, at the top of the stairwell, she stood face-to-face with Mr. Watkins, who had a knife pointed at her. She said the blade looked tarnished. Then, the following exchange occurred:

> "Q. It could have been plastic, could it not have been?
> Mr. Reich [State's Attorney]: Objection.
> The Court: Objection sustained.
> Mr. Goldstein [Defendant's Attorney]: Could you describe the difference between a plastic and what you observed that day?
> Mr. Reich: Objection.
> Mr. Goldstein: I am trying to find out what he had in his hand, Judge.
> Mr. Reich: Judge, if Mr. Goldstein wants to state where he's getting it [sic] I'd appreciate it, before there is a ruling on the objection.
> The Court: The objection is sustained."

After Mary Gramera testified, the State presented one other witness before resting. Watkins' case followed, and the matter then proceeded to a jury instructions conference and closing argument. During the State's closing argument, the prosecutor argued to the jury that the composition of the knife was totally unimportant. The prosecutor stated:

> "It doesn't matter what the blade was made out of. It doesn't

matter if it was metal. It doesn't matter if it was plastic. It doesn't matter if it was marshmallow, because the case law is clear * * *."

Defense counsel objected to the prosecutor's arguing his interpretation of case law to the jury. The trial judge made no ruling on this objection, and the prosecutor attempted to continue with this line of argument. Again defense counsel objected and requested a ruling on his objection. The trial judge refrained from ruling specifically on the objection but instructed the prosecutor to reserve for rebuttal any arguments he would choose to make on this issue.

During closing statements, defense counsel argued to the jury that the testimony concerning the alleged weapon greatly conflicted.

■■■ The jury returned a guilty verdict on the charge of armed robbery. The armed robbery statute provides that a person violates its provision when committing a robbery while armed with a dangerous weapon. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a).) Thus, for the State to prove armed robbery, it must establish all the elements of the offense of robbery and that the perpetrator was armed with a dangerous weapon. Proof of all these factors must be beyond doubt. Nowhere in the armed robbery statute is dangerous weapon defined. In analyzing whether an object is dangerous, two views have emerged, one subjective and one objective. The first and subjective approach argues that armed robbery happens when the robber intends to create in the victim the belief and apprehension that the robber had a dangerous weapon and the victim in fact so believed. According to this view, the objective dangerousness of the weapon is immaterial. (*People v. Chapman* (1979), 73 Ill. App. 3d 546.) This is an incorrect interpretation of the law. The second and correct approach is an objective test which requires that the weapon employed in the robbery be actually dangerous in the setting it is used.

Our supreme court has thoroughly discussed this subject in the recent case of *People v. Skelton* (1980), 83 Ill. 2d 58. The issue in *Skelton* was whether a particular plastic toy revolver used in an armed robbery was a dangerous weapon within the meaning of the armed robbery statute. (Ill. Rev. Stat. 1978, ch. 38, par. 18—2(a).) The court held it was not. It observed, however, that many objects could be dangerous weapons if used in a manner for which they were not designed. For instance, a gun, although unloaded, would be a dangerous weapon since it could be used as a bludgeon. In reaching its conclusion, the court affirmed the proposition that the issue of whether an instrumentality is a dangerous weapon is for the trier of fact.

■■ In the instant case, the trial court improperly limited the inquiry into the nature and composition of the weapon. The error was compounded during closing argument, when the court declined to sustain the defendant's objection to the prosecutor's improper and incorrect statement of the

law. The effect of these rulings was to remove from the jury's consideration the objective consideration of whether the object in Watkins' hand during the robbery was, in fact, dangerous. Dual errors on this subject were committed. The factual inquiry was improperly restricted, and the jury was misled as to the law.

■■ Since this case must be reversed and remanded, we wish to note, in passing, that dangerous weapons for purposes of the armed robbery statute are not limited to dangerous weapons as defined in the separate armed violence statute (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). This argument advanced by the defendant is erroneous.

For the reasons stated, however, the above cause is reversed and remanded for trial.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.