THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY P. PTAK, Defendant-Appellant.

Second District   No. 2—88—1174

Opinion filed February 9, 1990.

REINHARD, J., dissenting.

John F. Donahue and Joseph T. Bugos, both of Law Offices of Donahue, Sowa & Bugos, of Lisle, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Anthony Ptak, was charged by indictment with aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)), armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2), and attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1(a)(1)). Following a jury trial, defendant was acquitted of the offense of attempted murder, but was found guilty of armed violence and aggravated battery, and was sentenced to six years' imprisonment. On appeal, defendant contends that (1) the trial court improperly instructed the jury that a broken glass bottle was a dangerous weapon as a matter of law; and (2) he was denied effective assistance of counsel. We affirm.

At trial, Dennis Lindsey testified that on September 18, 1987, he was living in an apartment with his pregnant girlfriend, Vicky Grissette, and defendant. Lindsey stated that he, Grissette, and two friends were cleaning the apartment when defendant arrived around 4 a.m. Defendant was very angry when he entered the apartment and began arguing with Grissette. Lindsey heard the argument, entered the room, and pushed defendant onto the couch. Lindsey told defendant to leave Grissette alone and began to walk towards the kitchen to get a beer. At that time, defendant hit Lindsey in the head with a beer bottle. The beer bottle broke, and defendant began stabbing Lindsey with the jagged edges of the broken bottle. Lindsey stated that he was stabbed in the left arm, back, and chest. Grisette then got Lindsey out of the apartment and to a hospital. Lindsey stated that he was in the hospital for nearly one week following the attack.

Vicky Grissette testified that defendant arrived at the apartment around 3 a.m. and began drinking beer with Lindsey and a friend in the kitchen. Shortly thereafter, defendant began arguing with Grissette and pushed her once in the chest. Grissette stated that Lindsey and defendant then began their altercation, with Lindsey ending up on the kitchen floor after being cut by defendant's broken beer bottle. Grissette was able to get Lindsey out of the apartment and into his car, and a friend drove them to the hospital.

Officer James Kaplan of the Addison police department testified that defendant walked into the police station on September 18, 1987.

Officer Kaplan stated that defendant "appeared quite disorderly" and had dried blood on his face, hands, and clothing. Defendant told Officer Kaplan that he was involved in a fight with Lindsey and that he stabbed Lindsey with a broken bottle. Officer Kaplan further testified that paramedics were called to the police station to treat a bump on defendant's forehead.

Dr. Raymond Dieter, a surgeon associated with Elmhurst Hospital, testified that he saw Dennis Lindsey in the emergency room. Dr. Dieter stated that Lindsey had a severe laceration on his left arm, along with smaller cuts on his back, side, and hands. The lacerations resulted in Lindsey losing approximately one-half of his blood. Dr. Dieter stated that without medical treatment, the injuries to Lindsey would be life-threatening.

The State rested its case after Dr. Dieter's testimony. Defendant's motion for a directed verdict was denied, and defendant called two witnesses to testify. Defendant did not testify at trail. Following closing arguments, the jury found defendant guilty of armed violence and aggravated battery. Defendant filed a timely notice of appeal.

Defendant's first contention on appeal is that the trial court improperly instructed the jury that a broken glass bottle was a dangerous weapon as a matter of law. Defendant argues that whether he was armed with a dangerous weapon was an element of the offense which the State was required to prove beyond a reasonable doubt. Defendant contends that instructing the jury in this manner effectively curtailed the jury's freedom, as the trier of fact, to make an independent assessment of the evidence.

The State disagrees, arguing instead that a broken beer bottle is a *per se* dangerous weapon in that it is capable of serious bodily harm and has "no ascertainable legitimate use." As such, the State contends that the jury was properly instructed in this case.

A person is guilty of the offense of armed violence if he or she commits any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.) A person is considered "armed with a dangerous weapon" if:

> "he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character." Ill. Rev. Stat. 1985, ch. 38, par. 33A—1.

■ Any weapon specifically listed in the definition is considered to be a *per se* dangerous weapon. (*People v. Weger* (1987), 154 Ill. App. 3d 706, 712.) A broken glass bottle is not specifically listed in the definition. However, a weapon not listed in the definition can become a dangerous weapon when it is used in a manner dangerous to the well-being of the person threatened and is also of "like character." (*Weger*, 154 Ill. App. 3d at 712.) In *Weger*, the appellate court determined that the trial court erred in holding that a straight-blade razor was a *per se* dangerous weapon. (154 Ill. App. 3d at 712.) The court noted that even though the razor was easy to conceal and contained a sharp edge, it did have a legitimate use as a shaving device. (154 Ill. App. 3d at 713-14.) As such the State was required to show that the defendant used the razor as a weapon, which the State was unable to do. 154 Ill. App. 3d at 174.

The *Weger* court specifically relied on *City of Pekin v. Shindledecker* (1981), 99 Ill. App. 3d 541, in reaching its decision. In *Shindledecker*, the court had to decide if a device not specifically listed in section 24—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 24—1) was dangerous weapon. The court stated:

> "Common sense must be the guide. Such an approach acknowledges the character of the device and its potential for harm, while not being oblivious to the article's everyday use, the circumstances of its discovery, and in certain cases, the person's explanation as to its presence or possession. If it were otherwise, a baseball bat, rolling pin, and perhaps a golf club could qualify as bludgeons if a strict definition of that word is employed (See Webster's Third New International Dictionary 240 (unabr. ed. 1976)). This would lead to obviously absurd results." *Shindledecker*, 99 Ill. App. 3d at 574.

The State argues that, applying *Weger* and *Shindledecker* to the present case, the trial court properly considered the broken bottle to be a dangerous weapon as a matter of law. We agree.

■ In the case at bar, defendant used a broken beer bottle to inflict serious injuries upon the victim, using the bottle in a manner similar to a knife or dagger. Furthermore, unlike the straight-blade razor used in *Weger*, the broken bottle had no ascertainable legitimate use. Since the character of the weapon was such as to support only one conclusion, namely, that the weapon was dangerous, had no legitimate use and was used in a manner similar to a knife or dagger, the trial court properly determined that the weapon was a category I weapon. See *People v. Westefer* (1988), 169 Ill. App. 3d 59, 61-62.

We are also aware of other court decisions which support our de-

termination that a broken bottle is a dangerous weapon as a matter of law. In *People v. Thornton* (1986), 145 Ill. App. 3d 669, the trial court, in a bench trial, found that a broken beer bottle, which was used to slice the victim's ear and neck, was clearly a dangerous weapon for purposes of the armed violence statute. (*Thornton*, 145 Ill. App. 3d at 671.) The appellate court affirmed the defendant's conviction, often referring to the broken bottle as a "deadly" or "dangerous" weapon. 145 Ill. App. 3d at 671-72; see also *People v. Samier* (1985), 129 Ill. App. 3d 966, 969 (knife with blade of less than three inches was a deadly weapon given that knife was used to threaten life of victim on two occasions); *People v. Hunter* (1973), 14 Ill. App. 3d 879, 888 (jury properly inferred that broken bottle was used as a deadly weapon when the victim's daughter testified that she swept up broken glass from a beer or pop bottle in area where her father was attacked).

Defendant also contends that the trial court's instruction to the jury that the broken bottle was a dangerous weapon constituted an improper conclusive presumption. To support his argument, defendant cites *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450. In *Sandstrom*, the Supreme Court determined that it was improper to give a jury instruction which in effect shifted the burden of proof to the defendant to prove that he did not intend to commit an act. (442 U.S. at 521, 61 L. Ed. 2d at 49, 99 S. Ct. at 2458.) The Court noted that the instruction could constitute either a burden-shifting or a conclusive presumption, with either interpretation violating the defendant's due process rights. 442 U.S. at 524, 61 L. Ed. 2d at 51, 99 S. Ct. at 2459.

We believe that the case at bar is factually distinguishable from *Sandstrom*. In *Sandstrom*, the jury instruction related to the element of intent, an element of the offense that the State was required to prove beyond a reasonable doubt. However, the jury instruction given by the trial court effectively removed this element from the State's burden of proof, which the Supreme Court determined to be erroneous. (*Sandstrom*, 442 U.S. at 513-14, 61 L. Ed. 2d at 44-45, 99 S. Ct. at 2453-54.) In the present case, the trial court merely determined that the weapon used, the broken bottle, was a dangerous weapon as a matter of law. This determination did not relieve the State of its burden of proof with respect to the charge of armed violence. In addition, there is an inherent difference between the element of intent (as in *Sandstrom*), which is an element of an offense that the State must prove beyond a reasonable doubt, and a determination that a physical object (as with the broken beer bottle in the present case) is danger-

ous as a matter of law. As such, it is our opinion that the broken beer bottle used in the case at bar had no legitimate ascertainable use and was a dangerous weapon as a matter of law. Thus, we disagree with defendant's contention that the trial court improperly invaded the province of the jury as the trier of fact under the specific circumstances present in this case.

■ Defendant next contends that he was denied the effective assistance of counsel by his attorney's failure to have the jury instructed, during *voir dire*, that his failure to testify could not be considered against him. In order to demonstrate ineffective assistance of counsel, a defendant must show that (1) his attorney's conduct was professionally deficient; and (2) but for the deficiency, there is a reasonable probability that the result of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064-65.) Our supreme court has adopted the *Strickland* standard when dealing with a claim of ineffective assistance of counsel. *People v. Albanese* (1984), 104 Ill. 2d 504, 526, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.

Defendant cites *People v. Zehr* (1984), 103 Ill. 2d 472, to support his position that he was denied effective assistance of counsel. In *Zehr*, our supreme court determined that it was essential for jurors to know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify cannot be held against him. (*Zehr*, 103 Ill. 2d at 477.) The court noted that if a juror has a prejudice against any of these guarantees, a jury instruction given at the end of the trial "will have little curative effect." 103 Ill. 2d at 477.

■ Defendant asserts that the two-prong test in *Strickland* is satisfied given that his attorney did not question the potential jurors' attitudes regarding defendant not testifying at trial, with the result being that defendant did not receive a fair trial. We disagree.

A review of the record indicates that the trial court, on numerous occasions, specifically questioned the prospective jurors concerning possible prejudice or bias that may result from the possibility that defendant may exercise his constitutional right to refrain from testifying. At the beginning of the *voir dire*, the trial court informed the prospective jurors that they should listen carefully to the questions posed to each juror because the questions asked of each juror also applied to the rest of them. The trial court informed the first prospective juror that "the Defendant of course since his is presumed to be

innocent doesn't have to present any evidence, they don't have to call any witnesses but I anticipate they probably will and so you have to listen to both sides of the case, both State side and defense side and then decide who is telling the truth." Defense counsel also specifically questioned one prospective juror concerning defendant's failure to testify as follows:

"Q. And what is your attitude or feelings rather about Tony [defendant] testifying or not testifying, would you hold that against him?

A. Would I hold it against him?

Q. If he did not?

A. If he did not testify.

A. I guess I don't know.

Q. Do you feel—[?]

A. I guess I wouldn't hold it against him.

Q. Do you feel he should testify?

A. Yes.

Q. And in the portion of the trial if he chooses not to, would that adversely affect you in the hearing on the trial?

A. I don't think so.

Q. You don't think so?

A. No."

In addition, defense counsel also asked another prospective juror:

"Q. What if Tony doesn't take the stand, will you hold that against us?

A. No, I don't believe so.

Q. You hesitated for a second.

A. Just that I was thinking, no, I won't.

Q. So you don't demand that Tony testify in order to find him innocent?

A. No, I don't think I can demand anything.

Q. Well, you are the people that decide the facts, not me, not the Judge, the Judge only makes decisions of law and decides what can be presented and admitted into evidence. You have got the duty to decide guilt or innocence.

A. I guess my opinion is I always would like to hear his side of the story from him but I won't hold it against him if he didn't [sic] testify.

Q. But you do understand that the State must prove beyond a reasonable doubt—[?]

A. Oh, right."

Furthermore, defense counsel asked two other prospective jurors sim-

ilar questions, with both jurors positively stating that they would not hold defendant's failure to testify at trial against him.

A review of the extensive remarks and questions made by the trial court and defense attorney to the prospective jurors during *voir dire* leads us to the conclusion that the concerns expressed in *Zehr* were satisfied in this case. As the *Zehr* court noted, the questions need not be asked in any particular form as long as the subject matter of the questions is covered during *voir dire*. (*Zehr*, 103 Ill. 2d at 477; see *People v. Fox* (1988), 177 Ill. App. 3d 602, 610.) The trial court properly exercised its broad discretion in controlling the manner and scope of *voir dire*, and there is no showing that the procedure utilized was insufficient for discovering impartiality or prejudice. See *People v. Jones* (1988), 169 Ill. App. 3d 883, 900.

It is our opinion that defendant has failed to satisfy either prong of the *Strickland* test in this case. Defense counsel's decision to forego a specific *voir dire* question concerning the effect of defendant's failure to testify at trial was not an example of professionally deficient conduct, especially when such a decision may have been a matter of trial strategy. Matters of trial strategy are entitled to great deference on review. (*Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) This is so because "no two defense attorneys will necessarily agree on the same strategy for a particular case." (*People v. Hillenbrand* (1988), 121 Ill. 2d 537, 548.) While we believe that defense counsel's questions during *voir dire* concerning defendant's constitutional right to not testify could have been stronger, they did not rise to such a level to constitute professionally deficient representation. In any event, defendant has failed to demonstrate how he was prejudiced by the events which occurred during *voir dire* and thus cannot satisfy the *Strickland* requirement that the outcome of the trial would have been different.

For the above-stated reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN, J., concurs.

JUSTICE REINHARD, dissenting:
I respectfully dissent from the majority's holding that the issue of whether the broken glass bottle is a dangerous weapon as defined in section 33A—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1) is a question of law and that the trial court properly

instructed the jury on this question. I further disagree with the majority's statement that, in determining whether the defendant is "armed with a dangerous weapon" under section 33A—1, it is proper to consider that the weapon had no legitimate use and how it was used.

Approaching the latter problem first, it is important to recognize initially that we are here concerned with the crime of armed violence, which makes it a criminal offense to commit a felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2; *People v. Donaldson* (1982), 91 Ill. 2d 164, 168.) The term "armed with a dangerous weapon" for purposes of the armed violence statute is specifically defined as follows:

> "§33A—1. Definitions. (a) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character. (c) A category II weapon is a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1.)

The prohibited weapons are specifically named and include "any other deadly or dangerous weapon or instrument of like character." This inclusion of other such weapons of like character does not, in my opinion, warrant the conclusion drawn by the majority that it is proper to consider the use of the weapon to determine if it is deadly or dangerous.

The purpose of the armed violence statute and its severe Class X penalty is not only to punish the criminal and protect society from him, but also to deter his conduct—that of carrying the specified weapon while committing a felony. (*People v. Alejos* (1983), 97 Ill. 2d 502, 509.) It is clear that the legislature did not intend that the "use" of the weapon in the commission of a felony was necessary to commit armed violence, as the mere physical presence of a weapon while a crime is being committed is a sufficient threat to warrant proscription. *People v. Haron* (1981), 85 Ill. 2d 261, 268.

The fundamental problem with the majority's reasoning in concluding that in a prosecution for armed violence it is permissible to consider whether the weapon had no legitimate use and how it was

used in the particular case in determining if it is a dangerous weapon is that this approach and the cases relied on by the majority fail to observe the distinct statutory definition of "armed with a dangerous weapon" contained in section 33A—1 and its interrelationship with the purpose of the armed violence offense to punish and deter the carrying of a dangerous weapon while committing a felony. Consequently, *People v. Weger* (1987), 154 Ill. App. 3d 706, and *City of Pekin v. Shindledecker* (1981), 99 Ill. App. 3d 571, relied on by the majority, and cases cited in those opinions, which hold that a weapon not specifically listed in section 33A—1 can become a dangerous weapon when it is used in a manner dangerous to the well-being of the individual harmed, are incorrectly applying the dangerous weapons provisions in other sections of the Criminal Code, the armed robbery and unlawful use of weapons statutes, which are not relevant to the specific definition in section 33A—1.

What constitutes a dangerous weapon for armed robbery does not necessarily constitute a dangerous weapon under the armed violence statute, wherein categories of dangerous weapons are specified. (*People v. Myers* (1981), 101 Ill. App. 3d 1073, 1075; *People v. Watkins* (1981), 94 Ill. App. 3d 749, 753.) I further observe that the committee note under the definition for dangerous weapon in Illinois Pattern Jury Instructions, Criminal, No. 4.17 (2d ed. 1981) (hereinafter IPI Criminal 2d) states that this instruction is *not* to be given, *inter alia*, in armed violence cases. In this instruction, the manner and use of the object or instrument may be considered in determining whether it is a dangerous weapon. Thus, there is authority that the specific definition of "armed with a dangerous weapon" in the armed violence statute is distinct from the definition and use of the term "dangerous weapon" in other provisions in the Criminal Code.

For the foregoing reasons, I do not agree that, for those weapons not specifically listed in section 33A—1 of the Criminal Code, a weapon still can become a dangerous weapon depending upon how it is used and whether it has any legitimate use. I would not follow *People v. Weger*, relied on by the majority.

The next issue to be addressed is whether, in a jury case, the court or the jury determines whether the broken glass bottle is a "deadly or dangerous weapon or instrument of like character" to the category I weapons, applicable hereto, of a "knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, or stiletto." (See Ill. Rev. Stat. 1987, ch. 38, par. 33A—1(b).) The majority concludes that the question is one to be determined as a matter of law and is not to be submitted to the jury, as occurred here when the trial

judge gave an instruction based on IPI Criminal 2d No. 11.19, as follows:

"A person commits armed violence when he commits the offense of aggravated battery while armed with a dangerous weapon.

A person is considered armed with a dangerous weapon when he carries on or about his person or is otherwise armed with a broken glass bottle."

Defendant objected to this instruction on the basis that whether the broken glass bottle was a dangerous weapon was a factual question for the jury. He did not offer an alternative instruction at trial, although it appears the trial judges believed he was correctly following IPI Criminal 2d No. 11.19 by inserting the words "broken glass bottle" in the second blank provided for in IPI Criminal 2d No. 11.19.

IPI Criminal 2d No. 11.19 provides as follows:

"A person commits armed violence when he commits the offense of _____ while armed with a dangerous weapon.

A person is considered armed with a dangerous weapon when he carries on or about his person or is otherwise armed with a _____."

The committee note indicates that the name of the alleged dangerous weapon is to be inserted in the second blank. Thus, it would appear that the trial judge followed the direction of the IPI committee. The majority here concludes that a broken glass bottle is a dangerous weapon as a matter of law, citing three cases for this proposition. However, none of those cases involve the issue of how the jury should be instructed on the dangerous weapon question and state propositions of law premised either incorrectly on the use of the weapon (*People v. Thornton* (1986), 145 Ill. App. 3d 669; *People v. Samier* (1985), 129 Ill. App. 3d 966), or on an offense other than armed violence (*People v. Hunter* (1973), 14 Ill. App. 3d 879).

In my opinion, where the weapon in question in an armed violence prosecution is sought by the prosecution to be considered as a "deadly or dangerous weapon or instrument of like character," this becomes a factual question for the trier of fact. In this situation, the second blank in IPI Criminal 2d No. 11.19 should contain the words "deadly or dangerous weapon or instrument of like character." In this regard, the trial judge erred in inserting the words "broken glass bottle" in the second blank as that, in effect, conclusively informed the jury that a broken glass bottle is a dangerous weapon. Further, the committee note for use of IPI Criminal 2d No. 11.19 is somewhat misleading as

it states the name of the alleged dangerous weapon should be inserted. This comment is correct when the weapon is one specifically enumerated in section 33A–1 but is inaccurate where the weapon is asserted to be a dangerous weapon under the phrase "other deadly or dangerous weapon or instrument of like character." Finally, under my analysis, the other deadly or dangerous weapon or instrument cannot just be any weapon but must be "of like character" as one of the weapons enumerated in section 33A–1.

Having concluded that the issue of whether a weapon not enumerated in section 33A–1 is a deadly or dangerous weapon of like character is one for the jury, I would also add that initially the judge may, in an appropriate case, have to determine whether, as a matter of law, the question should be submitted to the jury. That is to say that if the judge should conclude as a matter of law that the weapon is *not* a deadly or dangerous weapon or instrument of like character, there the issue would not be submitted to the jury, and, presumably, the judge would grant a defendant's motion for a directed verdict on the charge of armed violence. As defendant only raised the issue that the jury should determine if the broken glass bottle was a deadly or dangerous weapon or instrument of like character, I need not determine whether, as a matter of law, the broken bottle was not such a weapon. On this point, however, I wish to amplify on this court's decision in *People v. Westefer* (1988), 169 Ill. App. 3d 59, an armed robbery case, on which the State relies for the proposition that where the character of the weapon is such as to admit of only one conclusion, the question becomes one of law for the court. *Westefer*, 169 Ill. App. 3d at 61-62; see also *People v. Skelton* (1980), 83 Ill. 2d 58, 66.

As previously stated, a dangerous weapon in an armed robbery case is not the same as those classified in the armed violence statute. However, the citation to *Westefer* provides me with an opportunity to elaborate on what we stated therein. In *Westefer*, the narrow issue presented was whether a utility knife used in an armed robbery can be termed a dangerous weapon as a matter of law in the context of a request by defendant for an instruction on the lesser included offense of robbery. (*Westefer*, 169 Ill. App. 3d at 61.) In presenting the issue to this court, the parties focused only on the character of the weapon and the trial judge's opinion that it was a dangerous weapon. Both parties only argued whether the weapon was dangerous *per se*, citing *People v. Skelton* (1980), 83 Ill. 2d 58, and *People v. Dwyer* (1927), 324 Ill. 363, and did not raise the broader issue of whether the court could make the determination as a matter of law. That question was not before us.

As the trial judge did not properly instruct the jury, the judgment below must be reversed and the cause remanded for a new trial. I need not address whether the act of picking up the bottle and breaking the bottle in the course of hitting the victim with it and then stabbing the victim with it is "carrying about his person or otherwise armed with a category I or category II weapon" in order to fall within the meaning of the armed violence statute. Neither the defendant nor the majority raised or discussed this potential issue.