No. 2--03--0386

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lee County.

)

Plaintiff-Appellee, )

) No. 01--CF--222

v. )

)

SCOTT O. VUE, ) Honorable

) Tomas M. Magdich,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

Following a jury trial, defendant, Scott O. Vue, was found guilty of two counts of home invasion (counts I, II) (720 ILCS 5/12--11(a)(1), (2) (West 2000)), one count of 
armed robbery (count III) (720 ILCS 5/18--2(a)(1) (West 2000)), one count of robbery (count IV) (720 ILCS 5/18--1(a) (West 2000))
, one count of residential burglary (count V) (720 ILCS 5/19--3 (West 2000)), one count of
 armed violence (count VI) (720 ILCS 5/33A--2(a) (West 2000))
, three counts of aggravated battery (counts VII-IX) (720 ILCS 5/12--4(b)(1), (b)(2), (b)(10) (West 2000)), and one count of unlawful use of weapons (count X) (720 ILCS 24--1(a)(2) (West 2000))
.  After 
the
 finding of guilty, the trial court vacated 
count I of home invasion, count IV of robbery, counts VII and IX of aggravated battery, and count X of unlawful use of weapons.  
Thereafter, 
the
 court entered convictions and sentenced 
defendant
 to 10 years in prison for 
count II of home invasion and 15 years for 
count III of armed robbery, to be served consecutively.  The court further sentenced 
defendant
 to 
5 years' imprisonment each for 
count V of residential burglary, 
count VIII of aggravated battery, and count VI of armed violence to be served concurrently to each other but consecutively to
 
the
 armed robbery and home invasion convictions, for a total of 30 years in prison.  Defendant contends: (1) 
the
 trial court erred in admitting collateral evidence of uncharged misconduct; (2) his conviction of armed violence must be vacated because 
the
 flashlight used to commit 
the
 aggravated battery is not a dangerous weapon within 
the
 meaning of 
the
 armed violence statute; (3) his conviction of aggravated battery must be vacated because that offense is a lesser included offense of home invasion; (4) his conviction of residential burglary must be vacated because it is carved from 
the
 same physical act as his conviction of home invasion; (5) 
the
 trial court erred in imposing consecutive sentences; and (6) 
the
 trial court improperly considered that he received compensation as a factor in aggravation for 
the
 armed robbery sentence.
  We affirm in part and vacate in part.

BACKGROUND

On September 3, 2001, 
Arden Strub, age 71, was talking on 
the
 phone in his home when 
defendant
 and codefendant Thomas J. Cover entered 
his
 residence
 through 
the
 front door by cutting 
the
 screen and unlocking 
the
 screen door.  Defendant struck Strub in 
the
 head with a metal flashlight numerous times.  Strub incurred multiple orbital fractures and a laceration which penetrated to 
the
 scalp's
 muscle.  As Strub lay on 
the
 floor bleeding profusely, 
defendant
 and Cover went to 
a
 file cabinet in 
the
 living room where they knew Strub kept valuable belongings.  Cover left Strub's home and joined 
defendant
, who brought a box full of pennies, sports memorabilia, and $500 from Strub's residence.  The codefendants then left for Milwaukee, Wisconsin, with 
defendant
's girlfriend, Stephanie Machen.  Cover later turned himself in to 
the
 police.  Several days after that, d
efendant
 and Machen were arrested in LaCrosse, Wisconsin.

[
Nonpublishable material under Supreme Court Rule 23 removed here.
]

ANALYSIS

1. Introduction

Before reaching 
the
 merits, we briefly address 
defendant's failure
 to preserve 
all of 
the
 issues except 
the
 argument regarding consecutive sentences
.  To preserve an error for review, a 
defendant
 must both object to 
the
 alleged error during 
the
 trial and renew 
the
 objection in his written posttrial motion.  
People v. Flynn
, 341 
Ill. App. 3d
 813, 828 (2003).  Defendant admits that he has waived 
these 
issues, but asks that we consider them as 
plain error.  The plain error exception to 
the
 waiver rule may be invoked where (1) 
the
 evidence is closely balanced or (2) 
the
 error is of such magnitude that there is a substantial risk that 
the
 
defendant
 was denied a fair trial and remedying 
the
 error is necessary 
to preserve 
the
 integrity of 
the
 judicial process.
  
People v. Smith
, 341 
Ill. App. 3d
 729, 737 (2003).

Our review of 
the
 evidence is that is was not closely balanced.  Cover's account of 
defendant
's actions from September 3, when 
they were at Strub's home, until September 6, when they 
parted company, provided direct and credible evidence of 
defendant
's guilt.  The circumstantial evidence offered by 
the 
numerous
 other
 prosecution witnesses repeatedly corroborated Cover's account of 
defendant
's actions and participation in 
the
 crimes.  
Moreover, the determination of 
the
 credibility of witnesses, 
the
 weight to be given to their testimony, and 
the
 reasonable inferences to be drawn from 
the
 evidence are responsibilities of 
the
 trier of fact.  
People v. Brisbon
, 106 
Ill. 2d
 342, 360 (1985).  The fact that cooperation agreements existed between 
the
 State and 
the
 witnesses did not cause 
the
 evidence to be closely balanced.  
Accordingly, because 
the
 evidence was not closely balanced, 
we
 must review 
those
 issues
 
defendant
 failed to preserve for review under 
the
 second prong of 
the
 
plain error analysis.

2. Collateral Evidence of Uncharged Misconduct

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

[
Nonpublishable material under Supreme Court Rule 23 removed here.
]

3. Armed Violence Statute

Defendant next contends that he was wrongly convicted of armed violence because 
the
 metal flashlight he used to commit 
the
 aggravated battery is
 not a dangerous weapon within the 
meaning of 
the
 armed violence statute (720 ILCS 5/33A--2 (West 2000)). 
 
Our research has disclosed no Illinois case that has decided the exact question of whether a flashlight falls within the definition of a bludgeon as used in 
the
 armed violence statute.

T
he
 armed violence statute provides 
the
 following:

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law ***."  720 ILCS 5/33A--2 (West 2000).

Under section 33A--1(c)(1) of the Criminal Code of 1961, a person is "considered armed with a dangerous weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon."  720 ILCS 5/33A--1(c)(1) (West 2000).  In charging 
defendant
 with a Class 2 felony, 
the
 State classified 
the
 metal flashlight as a Category III weapon.  See 720 ILCS 5/33A--3(b) (2000).  A Category III weapon is defined as "a bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character."  720 ILCS 5/33A--1(c)(3) (2000).  Because the interpretation of 
the
 armed violence statute presents a question of law, our review is 
de
 
novo
.  See 
People v. Davis
, 199 Ill. 2d 130, 135 (2002).

In 
Davis
, 
the
 supreme court recently considered 
the
 narrow issue of whether a pellet/BB gun is a dangerous weapon within 
the
 meaning of 
the
 1992 armed violence statute.  The court noted that 
the
 legislature defined 
the
 term "dangerous weapon" in section 33A--1.  
Davis
, 199 
Ill. 2d
 at 133. Under that section, "[a] person is considered armed with a dangerous weapon *** when he carries on or about his person or is otherwise armed with a category I or category II weapon."  720 ILCS 5/33A--1(a) (West 1992).  In 1992, 
the
 legislature defined a category I weapon as "
a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24--1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character."  720 ILCS 5/33A--1(b) (West 1992).
  A category II weapon was defined as "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character."  720 ILCS 5/33A--1(c) (West 1992).  The 1992 armed violence statute differed slightly from 
the
 2000 statute relevant to 
the
 case at bar.  The dangerous weapons that were listed in
 category I are now listed as separate category I and II weapons, and 
former category II weapons are now listed as category III weapons.

The 
Davis
 court noted that pellet/BB guns were not specifically included in 
the
 detailed list of firearms.  The court concluded that, if 
the
 pellet/BB gun were to fall within 
the
 statute, it would have to do so through 
the
 two inclusive clauses for category I weapons -- "any other firearm" and "any other deadly or dangerous weapon or instrument of like nature."  
Davis
, 199 
Ill. 2d
 at 136.

In determining whether 
the
 pellet/BB gun fit within 
the
 first inclusive clause, "any other firearm," 
the
 court considered that 
the
 lower courts did not recognize it as a firearm and 
the
 legislature did not statutorily define it as such.  The court concluded that it was reasonable to assume 
the
 legislature did not view BB guns or pellet guns as "firearms" and, consequently, did not intend these devices to be included under 
the
 clause "any other firearm" in 
the
 armed violence provision.  
Davis
, 199 
Ill. 2d
 at 136-37.

In applying 
the
 doctrine of 
ejusdem
 
generis
 and 
the
 last antecedent rule, 
the
 
court also determined that 
the
 pellet/BB gun did not fit within 
the
 second clause, "any other deadly or dangerous weapon or instrument of like nature."  The doctrine of 
ejusdem
 
generis
 provides that when a statutory clause specifically describes several classes of persons or things and then includes "other persons or things," 
the
 
word
 
"other" is interpreted as meaning "other such like."  
Farley v. Marion Power Shovel Co.
, 60 
Ill. 2d
 432, 436 (1975), quoting 
People v. Capuzi
, 20 
Ill. 2d
 486, 493-94 (1960).  The last antecedent doctrine provides that relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding.  They do not modify those that are more remote.  
McMahan v. Indusrial Comm'n
, 183 
Ill. 2d
 499, 511-12 (1998).  The 
Davis
 court observed that 
the
 second inclusive clause, "any other deadly or dangerous weapon or instrument of like nature," came at 
the
 end of 
the
 list of blade-type weapons and was intended to refer only to weapons or instruments "such like" 
the
 class of blade-type weapons which immediately preceded 
the
 clause in 
the
 provision, 
i.e.
, weapons or instruments that are sharp and have 
the
 ability to cut or stab.  The court believed that 
the
 clause was not intended to modify all of 
the
 named weapons and therefore was not intended to include BB guns or pellet guns or any other weapons, which are not firearms, but are 
of like nature
 to firearms.  
Davis
, 199 
Ill. 2d
 
at 138-39.

The 
Davis
 court further observed that 
the
 legislature, concerned with 
the
 possession of weapons during 
the
 commission of felonies, adopted 
the
 armed violence statute to discourage those who contemplated felonious acts beforehand from carrying weapons when they set forth to perform 
the
 acts.  
Davis
, 199 
Ill. 2d
 at 139.  While 
the
 court noted that pellet guns had been considered dangerous weapons for purposes of 
the
 armed robbery statute
, 
in none of 
the
 cases cited were 
the
 
defendant
s ever charged with armed violence.  
Davis
, 199 
Ill. 2d
 at 139-40
.  In addition, in cases where armed violence had been charged and 
the
 
defendant
 was armed with a weapon that was not specifically listed in 
the
 statute, reliance was placed on 
the
 "any other dangerous weapon or instrument of like nature" clause because 
the
 weapon was of like nature to 
the
 blade-type weapons listed.  See, 
e.g.
, 
People v. Ptak
, 193 
Ill. App. 3d
 782 (1990) (broken beer bottle); 
People v. Thornton
, 145 
Ill. App. 3d
 669 (1986) (broken beer bottle); 
People v. Chrisos
, 142 
Ill. App. 3d
 747 (1986) (sharp piece of glass).

Although 
the
 court read 
the
 statute as not including pellet/BB guns, it noted that, even if there were some ambiguity, it would be constrained by 
the
 rule of lenity to interpret 
the
 statute in a lenient manner.  The court observed that where a criminal statute is capable of two constructions, courts must adopt 
the
 one that operates in favor of 
the
 accused, particularly where 
the
 criminal statute operates as an enhancement provision, as in 
the
 case of 
the
 armed violence statute.  
Davis
, 199 
Ill. 2d
 at 140.

For 
the
 same reasons, 
the
 
Davis
 court found that 
the
 pellet/BB gun used by 
the
 
defendant
 was not a category II dangerous weapon.  As stated above, 
similar to 
the
 present statute, the
 1992 statute defined a category II (now category III) dangerous weapon as "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character."  720 ILCS 5/33A--1(c) (West 1992).
  In applying 
the
 statutory principles to this section of 
the
 statute, 
the
 court noted that, although a metal pellet/BB pistol might be capable of being used as a bludgeon, it is not typically identified as such and, under 
the
 doctrine of 
ejusdem
 
generis
, could not be interpreted to be "of like character" to 
the
 bludgeon-type weapons included in 
the
 category II listing.  
Davis
, 199 
Ill. 2d
 at 141.

Defendant argues that, in applying 
the
 principles espoused in 
Davis
 to 
the
 present case, it is clear that he was not armed with a dangerous weapon within 
the
 meaning of 
the
 armed violence statute.  Defendant believes that
 
Davis
' principles require that 
the
 item classified under 
the
 armed violence statute must be inherently a weapon to qualify as a dangerous weapon under 
the
 armed violence statute.  Because a flashlight is not considered a dangerous weapon and is not of like character to 
the
 weapons listed in category III, 
defendant
 contends that he should not have been charged with armed violence.  The State disagrees and contends that 
Davis
 acknowledged that where an item that is not inherently a weapon but is of like character and is used like one of 
the
 listed weapons, it may properly be considered to be a "dangerous weapon" within 
the
 meaning of 
the
 armed violence statute.  The State argues that, while a flashlight's principal purpose is not to bludgeon, it does have a similar shape and it can readily be used as a bludgeon-type weapon, just as a broken beer bottle or a shard of glass can be used as a blade-type weapon.

T
he
 word "bludgeon" is not defined by 
the
 statute
. 
 Dictionaries generally describe a bludgeon as being a short stick used as a weapon usually having one thick, heavy, or loaded end.  See, 
e.g.
, Webster's Third New International Dictionary 240 (1993); see also 
People v. Fink
, 94 
Ill. App. 3d
 816, 817 (1981).

Illinois cases that have considered whether a particular object is a bludgeon within 
the
 meaning of section 24--1(a)(1) of 
the
 Criminal Code (unlawful use of weapons) (720 ILCS 5/24--1(a)(1) (West 2000)) generally have rejected 
the
 State's urging that 
the
 term "bludgeon" be construed broadly to include any club-like weapon.  In 
Fink
, 
the
 State argued that a nightstick had both 
the
 physical and functional attributes of a bludgeon, that 
the
 word "bludgeon" should be defined with sufficient breadth to include any club-like weapon, and that 
the
 potential or actual use of an instrument is vital to a determination of whether a particular object is a bludgeon.  
Fink
, 94 
Ill. App. 3d
 at 817.  While we were aware of 
the
 nightstick's potential use as a billy club, our reading of 
the
 various subsections of section 24--1 caused us to expressly reject 
the
 State's urging that 
the
 term "bludgeon" be construed broadly to include any club-like weapon.  
Fink
, 94 
Ill. App. 3d
 at 819.  In 
People v. Tate
, 68 
Ill. App. 3d
 881 (1979), 
the
 court found that karate sticks, two 12-inch wooden sticks connected with a 6- to 7-inch chain, did not constitute a bludgeon for purposes of section 24--1(a)(1).  
Additionally, under general rules of statutory construction
, because 
the
 statute did not specifically list karate sticks as a weapon, 
the
 karate sticks could not be considered a weapon under that subsection.

We reject 
the
 State's interpretation of 
Davis
.  The legislature directs that 
the
 item must be a "dangerous 
weapon
 of like character."  (Emphasis added.)  720 ILCS 5/33A--1(c)(3) (West 2000). 
 
It does not state that 
an
 item qualifies as a bludgeon if it shares physical characteristics with 
a bludgeon
 and is used in a bludgeon-like manner to harm 
the
 victim.  Otherwise, 
the
 
Davis
 court would have found 
the
 pellet/BB gun to be a bludgeon within 
the
 meaning of 
the
 statute.  We believe that 
the
 legislature intended that 
the
 item used in category III under 
the
 armed violence statute be an inherently dangerous weapon.  
A
lthough a metal flashlight shares physical characteristics with a bludgeon and may be capable of being used as a bludgeon, it is not commonly identified as a dangerous weapon or commonly used as one and, under 
the
 doctrine of 
ejusdem
 
generis
, cannot be interpreted under 
the
 statute to be "of like character" to 
the
 bludgeon-type 
weapons
 included in 
the
 category III listing.  Moreover, c
ontrary to 
the
 State's argument, c
ommon sense dictates that a broken beer bottle or a shard of glass is similar to a blade-type weapon because it has no legitimate use other
 than as a dangerous weapon
.
  On 
the
 other hand, a
 flashlight is not inherently a dangerous weapon and has a legitimate use.  As such, it should not be considered a dangerous weapon for purposes of 
the
 armed violence statute
.

At this point, we wish to note that 
the
 State did not introduce 
the
 actual flashlight used, as it was never recovered.  From 
a
 description, 
the
 State introduced a Mag flashlight purported to be similar to 
the
 type of flashlight used by 
defendant
.  
Furthermore, there was no testimony that 
the
 flashlight used by 
defendant
 was physically modified in any way to make it appear more "bludgeon-like" so that he intended to use it as a weapon.
  It is clear that 
the
 legislature did not intend to define 
the
 
term "bludgeon" so broadly as to include any club-like item that could be used as a bludgeon; that would invite undue abuse.  
However, each case must be decided on its own particular facts.  Accordingly, in this case, we find that 
the
 metal flashlight is not a category III dangerous weapon within 
the
 armed violence statute's meaning.  T
herefore, defendant
's conviction of armed violence must be vacated.

4. Aggravated Battery Conviction

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

[
Nonpublishable material under Supreme Court Rule 23 removed here.
]

5. Residential Burglary

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

[
Nonpublishable material under Supreme Court Rule 23 removed here.
]

6. Consecutive Sentencing

Defendant's fifth contention is that 
the
 trial court should modify his sentences so that either, but not both, of his convictions of home invasion and armed robbery triggers consecutive sentences  pursuant to section 5--8--4(a) of 
the
 Unified Code of Corrections (Code) (730 ILCS 5/5--8--4(a) (West 2000)).  A
ccording to 
defendant
, because there was only one harm, 
the
 injury to 
the
 victim's head, there should have been only one triggering offense, and therefore 
we should find that his five-year sentences for residential burglary, armed violence, and aggravated battery would run concurrently to his other sentences, not consecutively
.

Although we have determined that 
the
 convictions of residential burglary, armed violence, and aggravated battery should be vacated, and 
defendant
 admits that each of his convictions of armed robbery and home invasion triggers consecutive sentencing, we must point out that 
defendant mi
sinterprets 
the
 statute.  
Clearly, 
the
 
statute 
does not require that severe bodily injury be apportioned among various offenses or that 
the
 number of injuries correlate with 
the
 number of triggering offenses, as 
defendant
 suggests.  The statute provides that 
"[t]he
 court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in 
the
 nature of 
the
 criminal objective, unless: (i) one of 
the
 offenses for which 
defendant
 was convicted was *** a Class X *** felony and 
the
 
defendant
 inflicted sever bodily injury, *** in which event 
the
 court shall enter sentences to run consecutively."  
730 ILCS 5/5--8--4(a)(i) (West 2000).  Here, as stated in section 5--8--4(a)(i)
, one of 
the
 offenses of which 
defendant
 was convicted is a Class X felony, and 
the
 trial court found that 
defendant
 inflicted severe bodily harm on 
the
 victim.  As such, 
the
 trial court was required to impose 
consecutive sentences.

7. Aggravating Factor in Sentencing

Defendant's final contention is that he was prejudiced when 
the
 trial court improperly considered that he received $500 in compensation 
as an aggravating factor for his armed robbery sentence although that factor was inherent in the offense.  In his memorandum order setting forth his reasons for structuring 
defendant
's sentences, 
the
 trial judge explicitly stated that he relied on 
defendant
 receiving $500 compensation as a factor in aggravation for 
the
 armed robbery conviction.  
The trial court sentenced 
defendant
 to 15 years' imprisonment for armed robbery.  The sentencing range for a Class X felony is 6 to 30 years.  See 730 ILCS 5/5--8--1(a)(3) (West 2000)
.  Section
 5--5--3.2(a)(2) of the Code (730 ILCS 5/5--5--3.2(a)(2) (West 2000)) provides that 
the
 trial court can consider compensation
 for committing 
the
 offense as a factor to accord weight in favor of imposing a term of imprisonment or may consider it
 as a reason to impose a more severe sentence under section 5--8--1 of 
the
 Code (730 ILCS 5/5--8--1 (West 2000)).

A factor implicit in most burglaries and thefts should not be used as an aggravating factor at sentencing.  
People v. Conover
, 84 
Ill. 2d
 400, 404 (1981).  Therefore, compensation
 
may be considered as a factor in aggravation only when one is remunerated to commit an offense, whether 
the
 offense is burglary or theft, in which proceeds may be taken, or whether 
the
 crime is one that does not involve proceeds, such as aggravated battery.  
Conover
, 84 
Ill. 2d
 at 405.  Here, there was no evidence that 
defendant
 committed 
the
 offense for remuneration.  
Rather, 
the
 evidence revealed that 
defendant
 received 
the
 proceeds of 
the
 offense.
  Accordingly, 
the
 trial court abused its discretion by improperly considering 
defendant
's taking of 
the
 proceeds as an aggravating factor in sentencing.

Citing 
People v. Burge
, 254 
Ill. App. 3d
 85 (1993), 
defendant
 contends that, because a mid-range, 15-year sentence was imposed on his armed robbery conviction, 
the
 error was prejudicial.
  The State contends that 
the
 error was harmless because 
the
 court also considered:
  (1) 
defendant
's 
1996 and 2000 convictions of domestic battery to his mother; (2) defendant
's 
2001 conviction of aggravated assault using a dangerous weapon
; (3) 
the
 victim was over 
the
 age of 60 years; and (4) a significant sentence was necessary to deter others.  We agree with 
the
 State.
  While it was error for 
the
 court to make reference to 
the
 receipt of compensation, we find such error harmless because 
the
 trial judge stated that he applied all factors in aggravation and mitigation 
in imposing 
the
 sentence.  See 730 ILCS 5/5--5--3.2(a)(3), (a)(7), (a)(8) (West 2000).  Accordingly, we determine that no undue weight was placed on an improper factor and 
defendant
 was not prejudiced thereby.

In conclusion, 
defendant's convictions and concurrent sentences of
 five years each for residential burglary, aggravated battery, and armed violence are vacated. 
 Defendant
's convictions and sentences of 10 years for home invasion and 15 years for armed robbery, to be served consecutively, are affirmed. 
 
T
he
 judgment of the circuit court of Lee County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

BOWMAN and CALLUM, JJ., concur.