THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT I. WEGER, Defendant-Appellant.

Fourth District   No. 4—86—0541

Opinion filed April 16, 1987.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On April 17, 1984, defendant, Robert Weger, was convicted at a bench trial by the circuit court of Macon County of the offense of burglary in violation of section 19—1 of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1983, ch. 38, par. 19—1) and armed violence in violation of section 33A—2 of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2). He was sentenced to seven years in the Illinois Department of Corrections on the armed violence conviction. In March 1986, defendant filed a petition for post-conviction relief, alleging he was not proved guilty beyond a reasonable doubt of the offense of armed violence and that he received ineffective assistance of counsel. After a hearing, defendant's petition was denied, and this appeal followed. We affirm in part and reverse in part.

The evidence presented at trial shows that on January 5, 1984, members of the Decatur Police Department responded to an alarm at the Team Electronics Store in the Northgate Mall. The officers ascended to the roof of the electronics store. There they found a co-defendant. The defendant was apprehended exiting the store through an air vent. The defendant had in his possession a pair of gloves and a canvas bag containing pry bars, sledge hammers, and a triangle wedge bar. He also had a map and a screwdriver in his pocket. In another pocket was found a straight-blade razor with the tip of the blade broken off. The remaining blade measured approximately 2½ inches long. The court found the defendant guilty of burglary, possession of burglary tools (Ill. Rev. Stat. 1983, ch. 38, par. 19—2), and armed violence for possession of the straight-blade razor. The court vacated the conviction for possession of burglary tools, entered judgment on the others, and sentenced the defendant on the armed violence conviction.

On March 10, 1986, defendant filed a *pro se* petition for post-conviction relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, pars. 122—1 through 122—7). Counsel was ap-

pointed, and a new petition was filed alleging that defendant did not receive effective assistance of counsel at trial and was not proved guilty beyond a reasonable doubt of the offense of armed violence. A hearing was conducted, and defendant's petition was denied. This appeal followed.

Defendant argues it was error to deny his petition for post-conviction relief. He alleges first that he was denied his sixth amendment right to effective assistance of counsel by his counsel's failure to perfect an appeal in this case since he would have prevailed on the merits of an appeal.

■ Ineffective assistance of counsel is to be judged by the standard set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 1052, which has been adopted by the Illinois courts. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) The *Strickland* standard is a two-prong standard. The first prong is if counsel's representation falls below an objective standard of reasonableness. The second prong is if these shortcomings deprived the defendant of a fair trial. For this, the defendant must show there is a reasonable probability that, but for the unprofessional errors, the result would have been different. 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.

■ The record clearly establishes that defendant intended to appeal, trial counsel indicated he would perfect his appeal, and no appeal was made. Failure to perfect an appeal when directed to do so falls below an objective standard of reasonableness. (*People v. Morguez* (1980), 90 Ill. App. 3d 471, 475, 413 N.E.2d 128; *People v. Meacham* (1977), 53 Ill. App. 3d 762, 767, 368 N.E.2d 400.) If defendant was prejudiced by this failure, then he has been denied effective assistance of counsel. Therefore, we need address the allegation of defendant's likelihood of success on appeal.

Defendant argues that if his appeal of the original trial had been perfected, he would have succeeded with two arguments, being (1) he received ineffective assistance of counsel; and (2) he was not proved guilty beyond a reasonable doubt of the offense of armed violence.

Defendant argues that he received ineffective assistance of counsel at the original bench trial since counsel conceded defendant's guilt to the offenses of burglary and possession of burglary tools. During opening statement, the trial counsel stated:

> "This won't be lengthy, but I do think it's proper to indicate to the court that even though we are not entering a plea of guilty at this time, we believe the evidence will indicate that

my client is guilty of the offense of burglary, and as far as the evidence goes, there will be evidence that he had burglary tools. I don't think there will [be] a conviction for the possession of burglary tools since that's essentially an included offense of the offense of burglary, but it is our position in this case that he's not guilty of the offense of armed violence ***."

Again, at closing argument he said:

"We think that there is evidence sufficient to find him guilty of burglary, but we have never contested that at any time. There is evidence sufficient to find him guilty of possession of burglary tools."

Defendant urges that this situation is controlled by the recent decision of our supreme court in *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1038, 92 L. Ed. 2d 727, 106 S. Ct. 3314. In that case, defendant was charged with murder. At opening statement, counsel admitted the defendant's guilt, and no theory of defense was offered during the guilt-innocence trial. The whole approach of defense counsel was to avoid the death penalty. The supreme court ruled that this conduct rose to ineffective assistance of counsel.

Our supreme court relied in part on a recent United States Supreme Court case which ruled that, at a bare minimum, the sixth amendment requires defense counsel to act as a true advocate for the accused. (*United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.) Our court stated:

"Where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.' (466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.) The court in *Cronic* explained:

'[T]he adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate" [citation]. The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.' (466 U.S. 648, 656-57, 80 L. Ed. 2d 657, 666, 104 S.

Ct. 2039, 2045-46.)" *People v. Hattery* (1985), 109 Ill. 2d 449, 461-62, 488 N.E.2d 513, 517.

Defendant invites us, based on *Hattery*, to create a blanket ruling that anytime defense counsel makes an admission of his client's guilt, even if on only one offense of a multioffense case, it becomes ineffective assistance of counsel. We must decline the invitation.

We do not read *Hattery* as such an all-encompassing rule. The court in ruling in *Hattery* stated: "After considering the actions of the defense counsel *in the present case* we are convinced that the prosecution's case was not subjected to the 'meaningful adversarial testing' required by the sixth amendment." (Emphasis added.) *People v. Hattery* (1985), 109 Ill. 2d 449, 464, 488 N.E.2d 513, 518.

Each allegation of ineffective assistance of counsel must turn upon its own peculiar facts. This is one reason behind the *Strickland* analysis. It gives a standard with which to judge each case.

The facts in the present case are sufficiently different from the *Hattery* case so that *Hattery* is not controlling. In *Hattery*, counsel conceded his client's guilt on the only offense charged. In this case, counsel conceded guilt on the charges of burglary and possession of burglary tools, for which there was overwhelming evidence. However, counsel vigorously contested the offense of armed violence.

In *Hattery*, the court noted the necessity of defense counsel's subjecting the prosecution's case to a "meaningful adversarial testing." The court stated:

" 'The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred.' " *People v. Hattery* (1985), 109 Ill. 2d 449, 462, 488 N.E.2d 513, 517, quoting *United States v. Cronic* (1984), 466 U.S. 648, 656-57, 80 L. Ed. 2d 657, 666, 104 S. Ct. 2039, 2045-46.

In the present case, defendant did receive a true adversarial criminal trial. Counsel admitted in part but contested in part. In *Hattery*, counsel admitted guilt on the whole offense. The defendant, in this case, had his question of guilt, as a whole, put through a meaningful adversarial testing.

■ To make the blanket ruling the defendant requests would unnecessarily tie the hands of defense counsel. Proceeding as counsel did, by conceding a client's guilt on the less serious offenses where there exists overwhelming evidence and contesting the more serious

offenses, could be viewed as good defense strategy. The hope is that the trier of fact will find the defendant guilty of the charges conceded and not guilty of the more serious offenses.

Defendant argues that this is improper, and counsel should either contest the lesser offenses, remain quiet on these, or have his client plead guilty to them. However, if counsel contests charges for which there is no defense, he is liable to lose credibility with the trier of fact when it comes to the charges where a legitimate defense exists. Similarly, if he has his client plead guilty or remains quiet, he loses the possible benefit of a compromise verdict.

Our supreme court in *Hattery* and the following cases, which were authority for the *Hattery* opinion, sought to prevent defense counsel from undermining the client's case by conceding guilt as to the whole case. In *Francis v. Spraggins* (11th Cir. 1983), 720 F.2d 1190, the defendant, charged with murder, took the stand and denied any knowledge of the crimes. Nevertheless, his attorney in addressing the jury expressed his belief that his client had committed the crime. In *Wiley v. Sowders* (6th Cir. 1981), 647 F.2d 642, the defendants were charged with theft and burglary. At trial, counsel, apparently attempting to work up sympathy for the persistent offender's hearing, consistently repeated that proof of this client's guilt was clear. In *Mullins v. Evans* (10th Cir. 1980), 622 F.2d 504, counsel mistakenly believed that due to the State parole provisions, it would be better for his client to be found guilty of first degree murder, with no recommendation of lenience, rather than any included offense. Therefore, counsel spent the whole trial ensuring his client would be found guilty of the most serious offense. No case relied on by the supreme court in the *Hattery* case deals with a fact situation similar to the present case.

We are aware of the recent decisions in our sister courts applying *Hattery* to cases with similar fact situations (*People v. Calhoun* (1986), 144 Ill. App. 3d 829, 494 N.E.2d 498; *People v. Woods* (1986), 151 Ill. App. 3d 687, 502 N.E.2d 1103). In *Woods*, the conduct of counsel was so deficient that under any standard the defendant was denied effective assistance of counsel. We believe *Calhoun* misapplies the *Hattery* case.

After considering *Hattery* and the cases it relies on, we do not believe it is automatically ineffective assistance of counsel when trial counsel concedes his client's guilt on offenses in which there is overwhelming evidence of his client's guilt when a vigorous defense is presented on other offenses. Therefore, we find that there is not a reasonable probability that defendant would have succeeded on appeal

alleging ineffective assistance of counsel.

■ Defendant next argues in relation to his claim of ineffective assistance of counsel that he would have also prevailed on appeal because he was not proved guilty beyond a reasonable doubt of the offense of armed violence. The failure to prove him guilty beyond a reasonable doubt is also the second ground alleged in the post-conviction petition. Since it involves the same facts, we will discuss them together.

A person is guilty of the offense of armed violence if he commits any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2.) The definition of "armed with a dangerous weapon" is contained in section 33A—1 of the Code, with the relevant part reading:

> "(a) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character." Ill. Rev. Stat. 1983, ch. 38, par. 33A—1.

A weapon specifically listed in the definition is considered a *per se* dangerous weapon. Mere possession of such a weapon during commission of a felony is sufficient to sustain a conviction for armed violence. (*People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48.) A weapon not listed can become a dangerous weapon when it is used in a manner dangerous to the well-being of the individual threatened. *People v. Chrisos* (1986), 142 Ill. App. 3d 747, 492 N.E.2d 216; *People v. Van* (1985), 136 Ill. App. 3d 382, 483 N.E.2d 666; *People v. Hall* (1983), 117 Ill. App. 3d 788, 453 N.E.2d 1327, *cert. denied* (1984), 467 U.S. 1228, 81 L. Ed. 2d 878, 104 S. Ct. 2683.

■ It is clear in this case that the straight-blade razor was not used against the officers. The question is whether this razor is a *per se* dangerous weapon. The trial court reasoned that the straight-blade razor is of like character with a switchblade knife. Therefore, under the definitional wording of "or any other deadly or dangerous weapon or instrument of like character," the court ruled that the straight-blade razor was a *per se* dangerous weapon. We disagree.

The definition of a dangerous weapon contains a list similar to

that for the offense of unlawful use of weapons contained in section 24—1 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 24—1). We do not mean to imply these sections are identical, but some of the analysis of section 24—1 is beneficial in answering our question. This section reads:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

(1) *** possesses *** any knife, commonly referred to as a switchblade knife, which has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife." (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(1).)

A straight-blade razor has the blade open and close in the handle. However, the blade does not open automatically by the use of hand pressure. Therefore, the analogy to a switchblade knife seems misplaced.

In *City of Pekin v. Shindledecker* (1981), 99 Ill. App. 3d 571, 426 N.E.2d 13, the court had to decide if a device not specifically listed in section 24—1 was a dangerous weapon. The court stated:

"The prohibited devices the statute lists is by no means a complete compendium of every possible deadly weapon. Such an index, if it ever could be composed, might prove counterproductive to the legitimate aims of law enforcement. It is through interpretation of the statute's various terms that the flexibility necessary to assure the proper result, depending on the facts of the cause, occurs.

***

*** [W]e believe the unlawful weapons statute is not intended to make the possession of every tool, implement, or sporting device which has the potential to inflict serious bodily harm an unlawful weapon. Common sense must be the guide. Such an approach acknowledges the character of the device and its potential for harm, while not being oblivious to the article's everyday use, the circumstances of its discovery, and in certain cases, the person's explanation as to its presence or possession. If it were otherwise, a baseball bat, rolling pin, and perhaps a golf club could qualify as bludgeons if a strict definition of that word is employed (see Webster's Third New International Dictionary 240 (unabr. ed. 1976)). This would lead to obviously absurd results." (99 Ill. App. 3d 571, 573-74, 426 N.E.2d 13, 15.)

This reasoning applies equally well to section 33A—1.

We are well aware of the potential for harm a straight-blade razor

possesses. It is easily concealable and contains a sharp edge. Historically, a straight-blade razor was commonly used for grooming but has probably become somewhat of an oddity even though some men may still use it as a shaving device. Maybe the time has come to equate the straight-blade razor with the switchblade knife or other items tested in section 33A—1 of the Criminal Code; however, we believe this is a legislative function, not a judicial function.

Due to the differences between a straight-blade razor and the statutory definition of a switchblade knife and the legitimate purpose for which a razor can be possessed, we hold the trial judge's determination that the straight-blade razor is a *per se* dangerous weapon was erroneous. Therefore, to support the conviction, the State would have to show evidence of use of the razor. There being no such evidence, we have no choice but to find that the defendant has not been proved guilty beyond a reasonable doubt of the offense of armed violence.

■ Since the defendant has been prejudiced by counsel's failure to perfect the appeal, we find that, in fact, the defendant was denied effective assistance of counsel concerning the armed violence conviction. Also, we find the defendant's right to due process of law has been violated since his criminal conviction of armed violence is not supported by evidence sufficient to convince the trier of fact beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Talley* (1981), 97 Ill. App. 3d 439, 422 N.E.2d 1084.) Therefore, we find the court erred in denying the defendant's post-conviction petition concerning his armed violence conviction. Since there is no evidence to support a conviction for armed violence, we will vacate that conviction. We find there is no error in the court's denying defendant's post-conviction petition concerning the burglary conviction. Since no sentence has been imposed on the burglary conviction, we remand this case for that purpose.

Affirmed in part, vacated in part and remanded.

GREEN and KNECHT, JJ., concur.