THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY BELL et al., Defendants-Appellants.

First District (3rd Division)   No. 1—86—1750

Opinion filed January 30, 1991.

Randolph N. Stone, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Kathleen Warnick, Special Assistant State's Attorney, and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

The defendant, Ricky Bell, was convicted for the murder and armed robbery of Robert Stewart, the attempted murder and armed robbery of William Rayburn, and the attempted murder of Troy Stewart, for his participation in the 1977 robbery at the Stewart residence located at 6952 South Michigan in Chicago. The defendant was sentenced on June 2, 1979, to serve concurrent sentences of not less than 25 nor more than 40 years for the murder of Robert Stewart, not less than 20 nor more than 40 years for the attempted murder of Troy Stewart, not less than 20 nor more than 40 years for the attempted murder of William Rayburn, and not less than 15 nor more than 25 years for each of the armed robberies of Robert Stewart and

William Rayburn. A codefendant, Terrance Smith, was convicted for the same crimes and sentenced to a term of 200 to 300 years for each charge, the sentences to run concurrently. No appeal was taken by the defendant Bell. Smith appealed, however, and succeeded in obtaining a new trial on the ground that the trial judge erred in refusing to tender a voluntary manslaughter instruction. *People v. Smith* (1981), 94 Ill. App. 3d 969, 972-73, 419 N.E.2d 404.

On December 3, 1985, the defendant filed a petition for relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*), alleging ineffective assistance of appellate counsel. In his petition, and during the post-conviction proceeding, the defendant relied upon the reversal of his codefendant's conviction to establish the required prejudice needed to obtain relief. In 1986, the trial court granted the defendant permission to file a late notice of appeal and that appeal is now before us. On appeal, however, the defendant has abandoned the instruction issue upon which his codefendant obtained a new trial. Instead, the defendant argues that: (1) the State failed to prove him guilty of armed robbery beyond a reasonable doubt because it failed to prove he took any property or that he intended to aid, abet, or facilitate the taking of any property; (2) the State failed to prove him guilty of attempt (murder) beyond a reasonable doubt because he did not have the specific intent to aid, abet, or facilitate the attempted murders of Troy Stewart or William Rayburn; and (3) the State failed to prove him guilty of murder beyond a reasonable doubt because it failed to prove that he had the specific intent to aid, abet, or facilitate the murder of Robert Stewart or that he committed the underlying felony. The defendant further contends that his sentences are excessive. The propriety of the circuit court's order granting permission to file a late appeal is not before us.

The evidence produced at trial reveals that the defendant, Smith, and a third man visited the Stewart residence on the evening of March 4, 1977. Robert Stewart, William Rayburn, Theresa Perry, and Stewart's 15-year-old nephew, Troy Stewart, were present at the time. Perry testified she had a short conversation with Smith and that Smith asked her if she had any money. Perry stated that she had met Smith through a co-worker named Glenna Smith. Perry further testified that she had recently received $3,200 in compensation for an injury she had sustained on the job, a fact she had communicated to Glenna Smith. Perry gave Smith $3, and the three men left.

A few minutes later, there was another knock at the door and Rayburn answered the door after hearing a voice reply "Terrance." Rayburn permitted the defendant, Smith and the third man to enter.

As soon as the door closed, Smith pointed a nickel-plated handgun at Rayburn's head. Defendant and the third man had their hands in their coat pockets as if they had guns. Smith searched Rayburn and took his money. He then ordered Rayburn to call Perry, who was upstairs. After Perry returned to the first floor, Smith asked who else was upstairs, and Perry replied that a friend was upstairs. Smith escorted Perry upstairs with his gun in her back whereupon the defendant took control of Rayburn, holding him against the wall with his hand in his pocket as if he were holding a gun.

Once upstairs, Smith ordered Robert Stewart to stand against the wall with his hands up. Smith searched Stewart and took between $150 and $200. The defendant decided to go upstairs, and he took Rayburn with him. When Rayburn arrived at the second floor, he saw Robert Stewart standing in the hallway against a closet door with a handgun in his mouth. Smith asked if there were any drugs or money in the house. After Rayburn answered no, Smith told Rayburn and Stewart to lie facedown on the floor in Mrs. Stewart's bedroom. The defendant and the third man began searching Robert's bedroom across the hall, and Rayburn observed the defendant pull drawers out from the dresser and throw their contents on the bed. Defendant and the third man then searched Mrs. Stewart's bedroom, and they found a butcher knife inside a dresser. They then searched Troy's bedroom. Troy had been sleeping, but was awakened when he heard voices at the foot of his bed. He observed the third man search his room while the defendant looked around. They found empty bullet shells on Troy's dresser and asked him where the gun was. Troy explained that the shells were left over from a New Year's Eve party and that there was no gun in the house. Defendant and the third man returned to Mrs. Stewart's bedroom and asked Robert Stewart and Rayburn about the gun and if they could call someone for drugs. Rayburn answered no, and Smith suggested that they might find the gun if the defendant stabbed Rayburn in the hand. Defendant leaned over Rayburn and cut the telephone line beside him.

Rayburn then heard a discussion near the entrance to the room. Smith stated that he was "going to take everybody out." When Theresa started to cry, Smith told her to stop or else she would be the first. The defendant said it was not worth it and suggested they leave because they had been there too long. Smith asked what time it was, and the defendant responded that it was 11:50 p.m. When Smith again stated that he did not want any witnesses left behind, defendant said, "[I]ts not worth it to kill them for what we got." Smith then responded that he was not going to leave anybody living to call the

police, and the defendant replied that they had been there too long and said, "Lets go, if your [sic] going to, go on and do it." Smith began firing at Rayburn and Robert Stewart. Stewart and Rayburn immediately jumped up and ran through a walk-through closet leading to Troy's room. Perry ran into a bathroom and closed the door. Smith chased Stewart and Rayburn into Troy's room, where Stewart and Rayburn leaped through the windows in Troy's room. Stewart sustained fatal injuries in the fall, and Rayburn managed to escape with only a sprained ankle. Smith then shot Troy as he attempted to leave. Smith then approached Troy, who had fallen on the floor in Mrs. Stewart's bedroom, and pointed the gun at Troy's head. Smith pulled the trigger twice, but the gun was empty.

Perry went to a police station around 3 a.m. where she viewed six photographs and made a positive identification of Smith and the defendant. The police arrested the defendant at his home and recovered a nickel-plated pistol. At 9 a.m. Perry again identified the defendant and Smith in a lineup. Ballistics tests confirmed that the handgun found in defendant's possession was the weapon used in the robbery.

■■ ■ Before reaching the merits of the defendant's appeal, we must first consider the State's contention that the issues now raised by the defendant are not properly before us. It is well settled that a claim of ineffective assistance of counsel on appeal is cognizable under the Post-Conviction Hearing Act (*People v. Scott* (1986), 143 Ill. App. 3d 540, 541, 493 N.E.2d 27; *People v. Perez* (1983), 115 Ill. App. 3d 446, 450, 450 N.E.2d 870; *People v. Frank* (1971), 48 Ill. 2d 500, 504, 272 N.E.2d 25), and that permission to file a late notice of appeal is an appropriate remedy where appellate counsel fails to perfect an appeal. (*Perez*, 115 Ill. App. 3d at 451.) The State contends, however, that the issues now raised by the defendant are not properly before this court on the ground that the defendant waived these issues by failing to raise them in his petition for post-conviction relief. Relying upon recent decisions which have held that a post-conviction petitioner must satisfy the two-pronged *Strickland* standard[1] in order to receive a late appeal (*People v. Jackson* (1987), 161 Ill. App. 3d 573,

---

[1]A determination that a defendant has been denied his right to effective assistance of counsel will be made if the defendant can show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) a reasonable probability that, but for counsel's errors, the result would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693-94, 697-98, 104 S. Ct. 2052, 2064-65, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246.

581-82, 515 N.E.2d 219, citing *People v. Weger* (1987), 154 Ill. App. 3d 706, 506 N.E.2d 1072), the State urges this court to hold that a petitioner must meet the *Strickland* test for each issue the petitioner seeks to litigate on appeal. The reasons prompting the State to advance this contention appear to be twofold.

First, the State maintains that absent such a requirement, petitioners seeking late appeals under the Post-Conviction Hearing Act could bypass the *Strickland* test and litigate unmeritorious issues on appeal. In support thereof, the State points out that Smith received a new trial on an instruction issue and that the defendant relied upon that reversal in his petition to satisfy the prejudice component of the *Strickland* standard. Now, the defendant has abandoned that issue and instead is raising the issues described above without first showing a reasonable probability that the result would have been different had these issues been raised on a timely appeal. Second, the State also points out that the Post-Conviction Hearing Act is limited to constitutional issues and does not provide for the redetermination of guilt or innocence. (*People v. Derengowski* (1970), 44 Ill. 2d 476, 479, 256 N.E.2d 455.) The State therefore feels that the defendant is circumventing the Act by challenging the adequacy of the proof without first meeting the *Strickland* test in the post-conviction proceeding.

If we comply with the State's request, then a post-conviction petitioner who has been deprived of his first appeal will have to raise every issue that could have been raised on that appeal and meet the *Strickland* test for each issue in order to raise them on a late appeal. Any issues not raised in the petition would be deemed waived when the petitioner finally gets his first appeal. We decline to so hold. When a defendant is deprived of his first appeal, which in Illinois is a matter of right, he has been denied a constitutional right if he can satisfy the *Strickland* test. (*Evitts v. Lucey* (1985), 469 U.S. 387, 395-400, 83 L. Ed. 2d 821, 829-32, 105 S. Ct. 830, 835-38.) We see no reason why a defendant should not be able to add additional issues on a late appeal after successfully meeting the *Strickland* test for at least one issue in the prior post-conviction hearing. The perception that the Post-Conviction Hearing Act is being circumvented here would not exist had the defendant not abandoned on his late appeal the very issue that he relied upon to show the prejudice necessary to obtain his late appeal in the first place. The State cites no authority for this procedural requirement it seeks to impose. Therefore, we hold that once a post-conviction petitioner succeeds in obtaining a late appeal, he may raise any issues he could have raised had he not been deprived of

his first appeal. We now turn our attention to the merits of the defendant's appeal.

■■ ■ The defendant contends first that the evidence produced at trial fails to prove beyond a reasonable doubt that he intended to aid or abet Smith in the robberies of William Rayburn and Robert Stewart. In order to hold an individual accountable for the conduct of another, the State must prove beyond a reasonable doubt that: (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this conduct took place either before or during commission of the offense; and (3) the defendant engaged in such conduct with the concurrent specific intent to promote or facilitate the commission of the offense. (*People v. Cooper* (1987), 164 Ill. App. 3d 734, 738, 518 N.E.2d 260.) Ordinarily, mere presence at the scene of the crime or mere acquiescence in the other's actions are not sufficient to hold one accountable. (*People v. Watts* (1988), 170 Ill. App. 3d 815, 825, 525 N.E.2d 233.) On the other hand, however, the State does not have to prove that the defendant actively participated in the overt acts which constituted the offense. (*Cooper*, 164 Ill. App. 3d at 738.) If the evidence shows that the defendant was present at the scene of the crime without disapproving or opposing the crime, the trier of fact may consider that conduct along with other circumstances and conclude that the defendant lent his countenance and approval and thereby aided or abetted the actor. *People v. Kessler* (1974), 57 Ill. 2d 493, 498, 315 N.E.2d 29.

■■ ■ In evaluating the sufficiency of the proof, the reviewing court will not set aside a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*Watts*, 170 Ill. App. 3d at 824.) The defendant asserts that the State used circumstantial evidence in its attempt to prove him guilty and that, therefore, the defendant's conviction cannot be upheld unless it can be shown that the jury precluded every reasonable theory of innocence. But the reasonable hypothesis of innocence standard of review is no longer viable, and the reasonable doubt test is applied to all criminal cases whether the evidence is direct or circumstantial. *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.

The defendant maintains that he went with Smith to the Stewart residence to collect a drug debt and did not intend to participate in an armed robbery. The defendant further asserts that there is nothing in the record to indicate that he had the specific intent to aid Smith in armed robbery. Contrary to the defendant's assertions, there is ample evidence supporting the jury's verdict. The evidence shows more than

mere presence or acquiescence. During the commission of the offenses, the defendant placed his hand in his coat pocket in an outstretched manner as if he had a gun concealed in his coat. He took control of Rayburn when Smith escorted Perry upstairs, and he participated in searching the house. He informed Smith of the time and advised him that they had been in the house too long just before the shooting began. Bell also aided in the robberies when he used a knife to sever the telephone line in Mrs. Stewart's bedroom.

■■ ■ Moreover, although a defendant's assistance must occur either prior to or during the commission of the offense, such assistance may be inferred from conduct occurring after the event. (*People v. Young* (1983), 116 Ill. App. 3d 984, 994, 452 N.E.2d 718.) In this case, the defendant did not report the incident to the authorities (*Watts*, 170 Ill. App. 3d at 825), and he had possession of the weapon used in the robberies when he was arrested. Bell also gave conflicting accounts of his whereabouts on the night of the crime when interviewed following his arrest. Therefore, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant aided Smith in committing the armed robberies of Robert Stewart and William Rayburn.

■■ ■ The defendant next contends that the evidence produced at trial fails to prove beyond a reasonable doubt that he possessed the concurrent specific intent to aid or abet Smith in the attempted murders of Rayburn and Troy and in the murder of Stewart. This contention is without merit, however, as the State did not have to prove that he had the specific intent to aid Smith in the commission of those crimes. All the State had to prove was that the defendant aided Smith in the commission of the armed robberies. Under section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c)), one who aids another in the commission of an offense is legally accountable for the conduct of the other, and the word "conduct" includes any criminal act done in furtherance of the intended act. (*People v. Terry* (1984), 99 Ill. 2d 508, 515, 460 N.E.2d 746; *Watts*, 170 Ill. App. 3d at 825.) Having aided Smith in the robberies of Robert Stewart and William Rayburn, Bell is accountable for the attempted murders of Troy Stewart and William Rayburn and the murder of Robert Stewart, which were committed in furtherance of the robberies.

The defendant next argues that his sentences are excessive. He urges this court to reduce his sentences on the grounds that he was only 19 years old at the time of the robbery, he did not bring a weapon with him to the Stewart residence, and he tried to dissuade

Smith from shooting Stewart and Rayburn. He further asserts that he left before Smith attempted to shoot Troy in the head. The defendant also maintains that his criminal history is light: one conviction for possession of marijuana and one conviction for aggravated battery.

■■ Although a reviewing court has authority to reduce a defendant's sentence (107 Ill. 2d R. 615(b)(4)), a reviewing court cannot reduce a sentence unless the trial judge has abused his discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344.) The court finds that the trial judge did not abuse his discretion.

For the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

WHITE and RIZZI,* JJ., concur.

*Justice Freeman heard the oral argument in this case, and following his election to the supreme court, Justice Rizzi was substituted, he listened to the tape of oral argument and read the briefs and record.