NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240685-U

NOS. 4-24-0685, 4-24-0686 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 3, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| ANTWAN TERRELL MAXEY, | ) | No. 15CF1432 |
| Defendant-Appellant. | ) | 16CF793 |
| | ) | |
| | ) | Honorable |
| | ) | Philip J. Nicolosi, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Harris and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the trial court properly granted the State's motion to dismiss defendant's postconviction petition at the second stage of postconviction proceedings.

¶ 2    In January 2017, defendant, Antwan Terrell Maxey, was found guilty by a jury of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2016) in Winnebago County case No. 16-CF-793. In March 2017, defendant was found guilty by a jury of aggravated driving under the influence of alcohol resulting in great bodily injury (*id.* § 11-501(d)(1)(C)) in Winnebago County case No. 15-CF-1432. Defendant did not file a direct appeal from either of his convictions. In March 2020, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) in each case. The trial court consolidated the two cases and granted the State's motions to

dismiss filed in each case. Defendant appealed in these consolidated cases. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In June 2015, in case No. 15-CF-1432, the State charged defendant by indictment with 15 counts of aggravated driving under the influence of alcohol and drugs resulting in great bodily harm after a motor vehicle accident that proximately caused various injuries to passengers Breanna Porchia and Tacoya Bell. In March 2016, in case No. 16-CF-793, the State charged defendant by indictment with aggravated fleeing or attempting to elude a peace officer. Defendant elected to represent himself in both jury trials.

¶ 5                          A. Trial in Case No. 16-CF-793

¶ 6         At the January 2017 trial, the State's evidence included the testimonies from Rockford police officers Scott St. Vincent, Dan Stewart, and Brandon Pofelski. All three officers were on patrol together in an unmarked police vehicle on the evening of March 16, 2016. All three officers observed defendant, whom they recognized from previous contact, exiting a gas station and entering a white Hyundai Santa Fe. After defendant drove from the gas station, the officers began to follow him. St. Vincent noted defendant was the sole occupant of the vehicle. The vehicle defendant was driving was registered as a rental car. Stewart noted defendant's driver's license was suspended. Upon initiating a traffic stop, all three officers indicated defendant immediately accelerated and subsequently disregarded a stop light. St. Vincent stated he believed defendant was driving 70 miles per hour in a 30-mile-per-hour zone. Stewart stated defendant drove in excess of 70 miles per hour, and Pofelski stated defendant was driving "at least 60" miles per hour.

¶ 7         Following the officers' testimonies, the trial court admitted into evidence a certified abstract from the Illinois Secretary of State showing defendant's driver's license was

suspended on March 16, 2016. The State rested.

¶ 8       Defendant testified on March 16 he was at home with his "wife-to-be and four kids." He denied he was driving. Following defendant's testimony, the trial court admitted four certified convictions for prior felony convictions pertaining to defendant's believability as a witness.

¶ 9       The jury returned a guilty verdict for aggravated fleeing or attempting to elude a peace officer and driving on a suspended driver's license. Defendant did not file a posttrial motion.

¶ 10       We note, from the record, defendant became increasingly hostile toward the trial court toward the end of his jury trial. He became argumentative about what he asserted was "the law" and accused the court of being "corrupt." Defendant stated he was not going to "participate" in proceedings and began to defy court orders to the point of being found in contempt of court.

¶ 11                         B. Trial in Case No. 15-CF-1432

¶ 12       In March 2017, a jury trial was held in case No. 15-CF-1432. Defendant again chose to represent himself. Prior to the trial beginning, the State requested 5 of the 15 counts be dismissed, which the trial court granted. We note from the record, defendant's openly hostile behavior with the court dissipated somewhat during this trial. Defendant, instead, refused to verbally acknowledge the court throughout the entirety of the proceedings. It is noted multiple times in the record that defendant was aware of the proceedings, and, at times, would smile or laugh. However, defendant did not verbally respond to any questions asked by the court, he did not cross-examine any witness, present any evidence, or make any argument throughout the trial proceeding.

¶ 13        Rockford police officers Daniel Stewart and Brandon Pofelski testified they were on patrol on June 15, 2015, at approximately 2:30 a.m. when they were dispatched to a traffic accident. When they arrived at the accident they identified four people, one of whom was not involved in the accident. Breanna Porchia was sitting on the curb across the street, Tacoya Bell was hanging out of the vehicle's rear windshield, and defendant was hanging out of the driver's side window. Defendant, Porchia, and Bell were all transported by ambulance to the hospital.

¶ 14        Porchia testified that on June 15, defendant was driving her and Bell when they were involved in the accident. Porchia stated it was raining that evening, and she was unsure if defendant was speeding. Defendant missed a turn and, when he nearly missed another turn, the vehicle lost traction and crashed. After the accident, she recalled she was bleeding and had neck pain. She learned at the hospital she had fractured her neck and received six staples to her head and 21 stitches to her left hand.

¶ 15        Traffic investigator Stacy Beaman testified she arrived at the accident and recovered two empty alcohol containers from the driver's side floorboard of the vehicle.

¶ 16        Dr. John Peter Strotkamp testified he was the senior attending physician at Swedish American Hospital and treated Porchia. Porchia had lacerations to her head, left arm, and left hand. She also had an "orbital blowout fracture" to her right eye and two fractures of vertebrae in her neck.

¶ 17        Dr. Todd Alexander testified he was a neurosurgeon who treated Bell following the accident. Bell had two fractures in her neck, five fractures to her thoracic spine, and rib fractures. Dr. Alexander stated one of Bell's thoracic fractures was "unstable," which required a "fairly significant operation to stabilize."

¶ 18        Forensic scientist Shelly Chase testified she tested defendant's blood which

contained "ethanol at .131 grams per deciliter." Chase stated ethanol is what is commonly referred to as "drinking alcohol" and that the .131 measurement was defendant's blood-alcohol concentration.

¶ 19　　　　　The State rested. As noted earlier, defendant did not present any evidence.

¶ 20　　　　　The jury returned verdicts of guilty on all counts. Defendant did not file a posttrial motion.

¶ 21　　　　　　　　　　　C. Sentencing and Postconviction Proceedings

¶ 22　　　　　A combined sentencing hearing was held in May 2017. Defendant continued his behavior from the second trial and chose not to verbally acknowledge the trial court. In case No. 15-CF-1432, the court entered judgments of conviction to two counts for aggravated driving under the influence involving great bodily harm, which pertained to the injuries sustained to Bell and Porchia, respectively. The court sentenced defendant to 12 years' imprisonment. In case No. 16-CF-793, the court entered a judgment of conviction for aggravated fleeing or attempting to elude a peace officer and sentenced defendant to 10 years' imprisonment to run consecutive to his sentence in case No. 15-CF-1432.

¶ 23　　　　　Defendant did not file a postsentencing motion or an appeal.

¶ 24　　　　　On May 19, 2017, defendant filed a *pro se* motion for " 'Dismissal 'McGraw.' " The trial court denied defendant's motion.

¶ 25　　　　　In March 2020, defendant filed a *pro se* postconviction petition in each case. In case No. 15-CF-1432, defendant alleged his due process rights were violated because (1) the evidence was insufficient to show Bell suffered great bodily harm, (2) there was a violation of the one-act, one-crime doctrine pertaining to his aggravated driving under the influence convictions, and (3) the trial court used "outdated [Illinois Pattern Jury Instructions]." In case

No. 16-CF-793, defendant alleged his due process rights were violated because (1) the evidence was insufficient to show he eluded police, (2) the evidence was insufficient to show the vehicle traveled at least 21 miles per hour over the speed limit, and (3) there was no probable cause to initiate the traffic stop.

¶ 26　　　The matter proceeded to the second stage of postconviction proceedings, and the trial court appointed counsel to represent defendant. The State filed a motion to dismiss both of defendant's petitions. A combined hearing on the State's motions was held in November 2023.

¶ 27　　　At the hearing, defendant's counsel stated he was moving to withdraw. Defendant did not object and requested to proceed *pro se*. The State argued defendant forfeited all of his arguments in his petitions because they could have been raised on direct appeal. However, the State conceded the one-act, one-crime issue.

¶ 28　　　The trial court granted the State's motion to dismiss defendant's petitions stating the issues could have been raised on direct appeal and were, thus, "procedurally defaulted." The court, however, granted defendant's claim regarding the one-act, one-crime doctrine pertaining to case No. 15-CF-1432. The State submitted an amended sentencing order dismissing the count pertaining to Bell.

¶ 29　　　This appeal followed.

¶ 30　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 31　　　"The [Act] provides a procedural mechanism through which criminal defendants can assert that their federal or state constitutional rights were substantially violated in their original trials or sentencing hearings." *People v. Buffer*, 2019 IL 122327, ¶ 12. A postconviction petition must clearly set forth the ways in which a defendant claims his constitutional rights were violated. 725 ILCS 5/122-2 (West 2020). "The petition shall have attached thereto affidavits,

records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.*

¶ 32 "The Act provides a three-stage process for the adjudication of postconviction petitions." *Buffer*, 2019 IL 122327, ¶ 45. Once a postconviction petition moves from the first to the second stage, the trial court may appoint counsel to represent the defendant, and the State may file responsive pleadings. *People v. House*, 2021 IL 125124, ¶ 17. During the second stage, the court determines "whether the postconviction petition and any accompanying documentation make a substantial showing of a constitutional violation." *Id.* If a defendant fails to make a substantial showing of a constitutional violation, his postconviction claims are subject to dismissal. *Id.*

> "A postconviction proceeding is not a substitute for a direct appeal but rather is a collateral attack on a prior conviction and sentence. The purpose of the proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal." *Buffer*, 2019 IL 122327, ¶ 12.

The trial court's dismissal of a defendant's claims at the second stage of postconviction proceedings is subject to *de novo* review. *People v. Johnson*, 2017 IL 120310, ¶ 14.

¶ 33 On appeal, defendant solely challenges the trial court's dismissal of his insufficiency of the evidence claims. He argues the court erred when it dismissed his claims as procedurally defaulted. He contends the State's failure to prove him guilty beyond a reasonable doubt is a constitutional claim. He argues his insufficiency of the evidence claims have merit and requests this court remand the matter for further proceedings under the Act. Defendant primarily cites *Jackson v. Virginia*, 443 U.S. 307 (1979), and *People v. Weger*, 154 Ill. App. 3d 706

(1987), to argue his sufficiency of the evidence claims are constitutional questions that are permitted to be raised for the first time under the Act.

¶ 34　　　　The State argues the trial court properly dismissed defendant's petitions. The State relies on *People v. Dunn*, 52 Ill. 2d 400 (1972), for the proposition that arguments regarding the sufficiency of the evidence do not present a constitutional question as it pertains to postconviction proceedings and *People v. Frank*, 48 Ill. 2d 500 (1971), for the proposition that the Act only provides a mechanism to review sufficiency of the evidence claims where a defendant has been denied his right to appeal or suffered from ineffective assistance of counsel.

¶ 35　　　　In *Jackson*, the defendant was convicted of murder following a bench trial. *Jackson*, 443 U.S. at 309. The question before the Supreme Court was the standard by which the appellate courts review a sufficiency of the evidence claim. *Id.* at 313. The court noted failure to prove a defendant guilty beyond a reasonable doubt "in a state trial *** cannot constitutionally stand." *Id.* at 318. The court subsequently set the standard for sufficiency of the evidence claims to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Id.* at 319. The court abandoned the "no evidence" rule as "simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt." *Id.* at 320.

¶ 36　　　　In *Weger*, the defendant was convicted of burglary and armed violence following a bench trial. *Weger*, 154 Ill. App. 3d at 707. The defendant filed a postconviction petition alleging he had not been proven guilty beyond a reasonable doubt and that he had received ineffective assistance of counsel. *Id.* The *Weger* court found the defendant had intended to file a direct appeal in the matter, but his trial counsel had failed to perfect the appeal. *Id.* at 708. The

court concluded counsel's failure was objectively unreasonable and assessed the merits of the defendant's claims to determine if he had been prejudiced by counsel's error. *Id.* The court found the trial court's finding that a straight-blade razor was a *per se* dangerous weapon was error and concluded the defendant had not been proven guilty beyond a reasonable doubt of armed violence. *Id.* at 714. Therefore, the defendant had been prejudiced by his trial counsel's failure to perfect a direct appeal as it pertained to the armed violence conviction. *Id.*

¶ 37 We are unpersuaded by defendant's arguments on appeal. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (noting the appellant bears the burden of persuasion as to his or her claims of error). In *Dunn*, our supreme court stated plainly "[q]uestions as to the sufficiency of the evidence have been held not to present a constitutional question and therefore are not properly considered in post-conviction proceedings." *Dunn*, 52 Ill. 2d at 402. In *Frank*, our supreme court clarified "the Act provides a proper vehicle for review of those issues as to which review by direct appeal has been unconstitutionally denied by deprivation of the right to appeal, the right to competent counsel on appeal, or the concept of fundamental fairness." *Frank*, 48 Ill. 2d at 504.

¶ 38 Defendant's reliance on *Jackson* is misplaced. As our supreme court stated:

"The due process clause of the fourteenth amendment to the United States Constitution [(U.S. Const., amend. XIV)] requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' *In re Winship*, 397 U.S. 358, 364 *** (1970). When a court reviews a conviction to determine whether the constitutional right recognized in *Winship* was violated, it must ask 'whether the record

evidence could reasonably support a finding of guilt beyond a reasonable doubt.' [*Jackson*, 443 U.S. at 318]. In other words, the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [*Id.* at 319.]" *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004).

¶ 39 *Jackson* set a standard of review for sufficiency of the evidence claims. It did not, however, require that proceedings under the Act usurp the appeals process to permit a defendant to raise, for the first time, a sufficiency of the evidence claim in a postconviction petition. As we noted earlier, proceedings under the Act are not a substitute for a direct appeal, but, rather, they are an independent, collateral attack on a prior conviction. See *Buffer*, 2019 IL 122237, ¶ 12. Courts of review have repeatedly held firm to *Dunn* and *Frank* after *Jackson*. See *People v. Flores*, 2022 IL App (2d) 210757, ¶ 26 (noting a postconviction petition as "[a] collateral attack is not designed to relitigate guilt or innocence [citation]—which is precisely what [the] defendant would have us do by reevaluating the sufficiency of the factual basis."); see also *People v. Creater*, 2022 IL App (4th) 200431-U, ¶ 53 ("Questions as to the sufficiency of the evidence have been held not to present a constitutional question and therefore are not properly considered in post-conviction proceedings." (Internal quotation marks omitted.)).

¶ 40 Defendant's reliance on *Weger* is also misplaced. *Weger* follows precisely from *Frank* that the Act permits a defendant to challenge the sufficiency of the evidence where the constitutional right to a direct appeal was denied. In the case *sub judice*, defendant's right to a direct appeal was not denied, he simply chose not to timely file a direct appeal. Furthermore, defendant was not denied effective assistance of counsel because he chose to represent himself.

Defendant identifies no fundamental fairness issue that would permit us to review his sufficiency-of-the-evidence claims for the first time under the Act. For that matter, we find it would be fundamentally unfair to all other criminal defendants to permit defendant in this case to sit idly by, not filing any posttrial motions and bypassing the direct appeal process through no fault but his own, only to claim years later the evidence was insufficient to prove his guilt.

¶ 41                                    III. CONCLUSION

¶ 42          For the reasons stated, we affirm the judgment of the trial court.

¶ 43          Affirmed.